Next case on the call this morning is agenda number 10. Case numbers 108289 and 108290, consolidated. People of the state of Illinois versus Zachary Boeckmann et al. Notes I'm with the Illinois Attorney General's office and I'm here on behalf of the intervener, appellant, Illinois Secretary of State Jesse White. At issue in these consolidated cases is the constitutionality of an Illinois law authorizing the Secretary of State to temporarily suspend the driver's license of any person who engages in underage alcohol consumption with a restricted driving permit available if the offender can show undue hardship. At least 36 states have laws like this one and these laws have consistently been upheld against constitutional challenges. The circuit court below nevertheless held that Illinois' law violates due process as applied to these defendants because there was no evidence that they intended to drive as well as to illegally drink alcohol on the evening in question. The defendants defend the circuit court's decision on this ground and they also urge affirmance on the alternate ground that license suspension under these circumstances, even though it is not a criminal punishment, violates the proportionate penalties clause of the Illinois Constitution. This morning I will address both of these arguments in turn. First, on the due process claim, there is no question that there is no fundamental right to a driver's license. The parties agree on this point and they also agree that the applicable standard against which to judge the Secretary's statutory suspension authority is the rational basis test. And license suspension under the circumstances presented here readily satisfies this test because it would be rational for the General Assembly to conclude that young people who break the law by drinking alcohol are likely to engage in other types of risky or illegal behavior, including drinking and driving, and in addition that young people who drink and drive are likely to be unsafe drivers. Ms. Notes, isn't it dispositive in Linder that there is no car involved in this at all? No, Your Honor. Linder is not dispositive on this point because Linder dealt with a quite different statute. As you know, at issue in Linder was the Secretary's authority to revoke based on the commission of a sex offense and the state did not even argue there that a sex offender is more likely to be an unsafe driver than any other sex offender. And rightly so. But underage drinkers are quite different. Given the fact that many young people die or are injured each year in alcohol-related car accidents and the fact that young people are likely to be less mature, less likely to drink alcohol responsibly, it would be very reasonable to conclude that an underage drinker, unlike a sex offender, is more likely to be an unsafe driver and that is not true. And thus would present a hazard to the public roadways. Counsel, isn't this a rational basis argument you're making now? Yes, it is, Your Honor. I believe both parties agree that the applicable standard here is the rational basis test and we argue that this statute is rationally related to two different legitimate government purposes. One is the purpose I have been discussing and that is keeping the roadways safe of unsafe drivers and the other purpose is deterring young people from engaging in underage consumption of alcohol. And the reason that this statute is likely to be a powerful deterrent against underage drinking is the fact that the penalties for underage drinking tend to be relatively minor, at least on a first offense. Most offenders will receive a small fine and a short term of court supervision like these defendants did here. And so given that the relatively minor criminal penalties and the fact that young people tend to highly value having the ability to drive, it would be very reasonable for the General Assembly to conclude that this law is a rational means of deterring underage drinking. Above and beyond the General Assembly's legitimate interest in deterring underage drinking and driving and therefore keeping the highways safe. So we have two rational basis arguments and this court could reverse the circuit court relying on either or both of those grounds. Back to Justice Berg's question and Linder's, and I understand that your position is distinguishing Linder. The language is kind of broad though and I'm just wondering how you would address this language. Keeping off the roads who have committed offenses not involving vehicles is not a reasonable means of ensuring that the roads are free of drivers who operate vehicles unsafely or illegally. So it seems like it's broader than just the, it seems to say someone has to be on the road to decide whether to keep them off the road. How would you distinguish that outside of what you've already said to Justice Berg? I mean I certainly agree with you that the language is broad. The central holding of Linder though was that that statute did not satisfy due process because it was not rationally related either to keeping the roadways safe or to deterring sex offenses. And we agree that this, we believe this case is different for the reasons I've articulated. To the extent the language of Linder seems to be broader, our position is as I articulate in our brief that that's actually dicta and it's obiter dictum. Because in that case the state did not even argue that the statute was rationally related to keeping the roadways safe. So the court was not asked to squarely address that question. So the language that, to the extent Linder seems to use broader language than it's holding, that language is dictum. And then in addition to the due process claim, the defendants are also articulating a proportionate penalties clause claim. And license suspension under these circumstances does not violate the proportionate penalties clause for two independent reasons. First, decades of Illinois cases, including cases from this court, hold that the Secretary's authority to suspend or revoke a license suspension is not sufficient. Second, a license suspension to revoke a driver's license is an administrative function and not a criminal penalty. As a result, license suspension does not even implicate the proportionate penalties clause, which requires a direct action by the state to inflict punishment. And even if that clause did apply here, the defendants cannot satisfy either of the two tests that this court recognized in People v. Sharp for a proportionate penalties clause violation. First, they have not pointed to two identical offenses that have different penalties, and thus they cannot satisfy the identical elements test. And second, they have no colorable argument that it is cruel and degrading, which is the standard that they have to meet under the alternate proportionate penalties clause test. They have no colorable argument that it is cruel and degrading to order a limited license suspension, only three months, with a restricted driving permit available upon showing of undue hardship, following what even they would concede is a serious offense. That is the offense of underage consumption of alcohol. If the court has no further questions at this time, for these reasons and the reasons stated in our briefs, we respectfully request that the judgment of the circuit court be reversed, and that the court be adjourned. And that the constitutionality of the secretary's statutory authority to temporarily suspend the driver's license of any person who engages in underage drinking be confirmed. Good morning. May it please the court, my name is Brian Trentman. I'm here on behalf of Chelsea Mashoff. Zachary Beckman I represent as well. While his parents were able to attend, he's got college to attend to today. And if it please the court, to respond first of all to some things that were brought out in oral argument by the secretary of state's attorney, in the initial part when they were talking about due process, they referred to this as being a, quote, relatively minor offense. When we got to proportionate penalties, all of a sudden it was a serious offense. I believe that possession and consumption of alcohol by people under 21, the legislature, the courts, and the people in the state of Illinois have recognized that's a very serious offense. And it's got very serious and harsh penalties.  And I think it's proper to characterize it as a very serious offense and not to say, well, it's something that if kids do, they go out and they get a relatively short period of supervision and they pay some fines and that's the end of it. It's much more than that. It's a very serious offense. The people who are good kids, like Chelsea and Zach, who when told by the judge, listen to these terms and conditions of supervision, follow them, and you have the opportunity to not have this stigma for some period of time on your record, then supervision is an appropriate sentence. And Judge Becker presumably looked at all the factors and decided that that was true in both of their cases. But they could have been sentenced up to 364 days in jail, they could have been fined up to $2,500. If convicted, they would have lost the right to possess a firearm while under 21. These are serious offenses and by our brief, we've never meant in any way, shape, or form to take away from the seriousness of it. Illinois has looked at this and said this is a serious situation. Kids shouldn't be drinking or possessing alcohol when they're under 21. But if it's not, if it doesn't have anything at all to do with a motor vehicle. And another point that was brought up by the Secretary of State's attorney is there was no indication of any evidence that they were going to drive a car in this case. Well, that's true. But it was much broader than that. Judge Becker specifically found that there was no car involved in any way, shape, or form in this case. It wasn't a situation where somebody got in a car, went to a liquor store, came back. The evidence in this case was everybody was staying at the place that they were at and their parents were aware of it. And they weren't going anywhere and no car in any way, shape, or form was involved in getting the liquor there and being available for the kids to drive away or in any way, shape, or form related to it. And I think that's very important for the court to take into account. And I agree with the observations made about the broad language in the Lidner case. I think effectively what the Secretary of State's office is asking you to do is to overrule Lidner. And I understand while they've attempted to distinguish it, to me it's a distinction without a distinction. You agree, of course, that the rational basis test applies to this case? Yes, I do, Mr. Chief Justice. Yes, I do. And I want to digress just for a second because it's something that I alluded to in my brief, which if the court disagrees with me, I understand that. But I think that the first issue that needs to be addressed is whether or not 6-206 is discretionary or whether it's something they have to do. The language in the statute says that the Secretary of State's office is authorized to suspend or revoke. One way to read that would be to say, well, it's one or the other. I don't, and that's what they're arguing, they have to do one or the other. But that's not the way I read is authorized to. It's not even shall. And we can argue whether or not shall is mandatory or permissive. It says is authorized to. To me, that means they could. Could to me is discretionary. They could suspend. They could revoke. Maybe they don't want to do anything at all. The statute does not say they must suspend or they must revoke. Again, if the court disagrees with me and says that that language means that they have to take some action, I understand that. But I don't think it cuts away from my argument under Lindner that it's a due process violation when there's no car in any way, shape, or form involved in this particular case. In either Mr. Beckman's and Ms. Mashoff's case. And I think that the cases that they rely upon, the Horvath and Freed cases, no disrespect to those courts, but I don't get the sense that there was an analysis of the prongs that were set forth in the Lindner case. Do you believe that Freed and Horvath would have to be overruled if we uphold what the trial court did here? No, I don't. I don't think that you would have to overrule them. I think that you can properly affirm Judge Becker and find that in this particular situation with no car in any way, shape, or form being involved, that's a violation of due process. I believe that, Justice Garman, that this court could do that. What about under the vehicle code, a person can have their license suspended for failing to pay child support. And that's been tested and found constitutional. Would that kind of a provision be in jeopardy if we accept your point of view? I don't think necessarily. Because our point of view is that for the limited facts of our case, the evidence is no motor vehicle in any way, shape, or form. I guess if there's a child support case out there that says that somebody has a driver's license and their ability or inability or their failure to pay child support has absolutely nothing to do with a motor vehicle, I guess there could be some argument made to that. But most people are going to want to have a driver's license to get back and forth to work to earn an income. So I don't think necessarily that that would be the case, that to do this would open that sort of a floodgate. Mr. Trentman, hasn't, and Chief Justice Gerald keeps asking about the rational basis test, and that's really what the crux of the issue here is, isn't it? And when we look at rational basis arguments and where we felt the rational basis test has been met, cases have been held, haven't there been rational basis upheld that were less of a stretch than finding that underage young men and women who are drinking are more likely to drink and drive? I mean, is that so much, is that more of a stretch than other cases in which we have found a rational basis? You really put me in a trick bag, Justice Thomas. I certainly don't mean to speak ill of your other opinions. I think arguably, arguably one could say that yes, that there have been other cases which have involved less of a stretch. And I thought about it this way, you know, drinking and kids getting hurt, killed is a serious situation. As we found out, texting or talking on the phone, being tired or being inattentive, driving fast, driving recklessly. And I thought, you know, if we're going to start doing this, I guess they could make a law that says if a kid sits in his bedroom late at night and plays his video game while talking on his cell phone or texting, he might go out there and practice that on the roads or be more likely to practice that out on the roads. And I would hope that we wouldn't have a law that says if a kid's going to play a video game when he's tired at night while texting a phone, that's going to lead to him losing his driver's license. But that's kind of where the Secretary of State's put us, if there's no car involved. There's a little difference between, I guess, texting at home and playing a video game at home is not a crime, right? Where underage drinking is. That's correct. Yes, it is. That's the distinction. I apologize, Mr. Chief Justice. Isn't there another distinction that such a charge with the video game would not be rational? And I'm arguing that this isn't rational in this case as well. Yes. There are some things that are rational and some that are not. That's true. And I apologize, Mr. Chief Justice, I didn't mean to cut you off. You don't have to. Don't worry about it. Thank you. But again, we're involved in a situation where the trial court has entered a finding that there's no car involved in this in any way, shape, or form. I wanted to touch briefly upon the proportionate penalties. And I understand that I may be asking the court to look at the word penalty that's in our Illinois Constitution, perhaps in a broader form than it has in the past. And the thing that's, and I think as recently as the Klepper decision about a month ago, the court looked at the factors set forth in SHARP and whether or not it's identical elements or cruel and degrading. Excuse me, counsel. Yes. Was this argument made in the trial court? It was made. The judge did not rely upon it. I had actually argued four different, I'm sorry, six different bases, that it was a violation of due process, equal protection, and proportionate penalties, generally and specifically as applied to the facts in this particular case. Judge Becker entered a ruling finding it unconstitutional as applied to this case as a due process violation. Thank you. On the proportionate penalties, it's very difficult to go out there and explain to people that if somebody's driving around with a beer can that's open in the car and they get court supervision, they don't lose their driver's license. But if somebody's at a house where there's no motor vehicle involved at all, they do lose their driver's license. Illegal transportation of alcohol has actually an additional element but gets treated less severely. Possession or consumption of alcohol by minors is a Class A misdemeanor, one step below a felony. Illegal transportation of alcohol, driver or passenger, is a petty offense. If you're the passenger you can get convicted and not lose your license. If I'm 20 years old and I get charged with having an open beer driving around as a passenger in a car and I get convicted of it, I don't lose my license. I only lose my license if I get both, if I'm both the driver and a conviction is entered. I admit that the elements aren't identical, but the ironic thing is the one that has the additional element, being in a car, is treated less severely. Petty offense instead of Class A misdemeanor, you don't lose your license unless you're convicted and a driver. To me, I would ask the court to find that it's cruel and degrading. Again, it's very difficult to explain to the general public how somebody driving around with an open beer can gets supervision, he doesn't lose his license, and somebody who has no connection at all to a motor vehicle can't. Thank you and I'd be happy to answer any other questions. Thank you. Just a few points, Your Honors. First of all, there might have been some confusion about our argument in the opening. Our position is not that underage drinking is a relatively minor offense. The point I was trying to make is that in most cases, as in this case, for a first offense, many defendants receive only minor criminal penalties, the fine and the short term of court supervision. And that, in combination with the fact that young people tend to highly value having the ability to drive, means that it was rational for, it would be rational for the General Assembly to conclude that license suspension under these circumstances would be a powerful deterrent to underage drinking. We certainly agree with Mr. Trentman that underage drinking is a serious offense and, in fact, that is why we urge the court to sustain the law at issue, which is designed both to protect the roadways from unsafe driving and to deter underage drinking. Second, Mr. Trentman stressed the fact that there was no vehicle involved here, and, of course, we concede this point. Nevertheless, at least 36 states have laws just like Illinois's. No motor vehicle is involved, need be involved before the Secretary of State may take action against an underage drinker's driver's license in those states, and these laws consistently have been upheld. Third, there were some questions about cases that might have to be overruled were this law not sustained, specifically Freed and Horvath, and I do believe it's possible those cases would have to be overruled, because the basis for the appellate court's reasoning was that there is a reasonable link between possession of fake ID, underage drinking, drinking and driving, and then unsafe driving. So certainly while the facts are different, the appellate court's reasoning would be called into question were the circuit court's decision sustained here. And similarly as to Justice Garmon's question regarding whether other laws such as child support laws that allow for action against driving privileges when no vehicle is involved, it's very possible that such laws would be called into question. Then finally, on the proportionate penalties clause issue, Mr. Trentman argues that individuals, I guess, who drive with alcohol and perhaps violate the open container laws are treated less severely than individuals who commit their underage drinking violation outside of a car. And in fact, the open container prohibition and Section 620, which prohibits underage consumption of alcohol, have, as he pointed out, different elements. For example, the open container prohibition sweeps far more broadly than does Section 620. It allows for penalization in a situation where, say, a passenger in the back seat had an open container. The minor driver could be held culpable under the open container provision in that situation, even though the minor driver may not qualify under 620 for having engaged in underage possession of alcohol. At the same time, the open container provision does have additional elements to be culpable under the open container prohibition. You have to be not only a minor, but you have to be the driver, and the container has to be open. Those things, the driving and the open container, are not true of Section 620. So I think, as Mr. Trentman would agree, these offenses don't have identical elements, and therefore they cannot rise to the level of a So, again, if there are no questions, we respectfully request that the judgment of the Circuit Court be reversed.